UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIO GARCIA,<br><br>　　　　　　　　　Plaintiff,<br><br>v.<br><br>WAL-MART ASSOCIATES, INC., et al.,<br><br>　　　　　　　　　Defendants. | Case No.: 18-cv-00500-L-MDD<br><br>**CLASS ACTION**<br><br>**ORDER DENYING WITHOUT PREJUDICE DEFENDANT WALMART INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE [ECF NO. 80]** |

Pending before the Court is Defendant's Motion for Partial Summary Judgment in this class action alleging violations of the California Labor Code. [ECF No. 80-1.] Plaintiff's oppose. The Court decides the matter on the papers submitted and without oral argument. See Civ. L. R. 7.1(d.1). For the reasons stated below, the Court **DENIES** Defendants' Motion.

**I.　PROCEDURAL HISTORY**

This is a class action alleging Defendants Wal-Mart Associates, Inc. and Wal-Mart Stores, Inc. (collectively "Defendants") violate California Labor Code §§ 201-203 by

failing to pay its separating employees, whether involuntarily terminated or voluntarily resigned, all final wages within the timing requirements set forth by statute. Defendants, the self-proclaimed largest retailer in the world, employ millions of workers worldwide. In California, from February 1, 2015 to November 23, 2018, Defendants terminated 175, 684 workers. On the termination or separation date, Defendants provide a written check to the former employee for wages due at the point of termination. Also, at that time, Human Resources staff will initiate a calculation request to determine the amount to be paid as final wages to the former employee. At times, Defendants' calculation of the employee's final wages is not based on all wages the employee is owed because Defendants' payroll and timekeeping systems and databases do not reflect all earned wages due and owing to the former employee at the time of termination. As a result, Defendants then pay employees additional wages, earned prior to termination, after the former employee's termination.

On August 26, 2019, the Court certified a class consisting of:

> All individuals who worked for Defendants in the State of California whose employment ended at any time from February 1, 2015, through the present, and who received a Statement of Final Pay and then received any additional wages (regular, overtime and/or vacation) on Defendants' on-cycle payroll immediately subsequent to the issuance of the Statement of Final Pay to the individual.

(Order at 8 [ECF No. 48.])

This Court also certified the following subclass:

> Any and all individuals who worked for Defendants in the State of California whose employment ended at any time from February 1, 2015, through the present, and who received a Statement of Final Pay and then received any additional wages (regular, overtime and/or vacation) more than 3 days after the issuance of the Statement of Final Pay on Defendants' on-cycle payroll immediately subsequent to the issuance of the Statement of Final Pay to the individual.

(*Id.*)

Plaintiff filed a First Amended Complaint on September 12, 2018, seeking (1) waiting time penalties under California Labor Code § 203 and (2) penalties under California's Private Attorneys General Act, Labor Code § 2698 *et seq*. ("PAGA") alleging that he was not paid all of his earned wages at the time of termination

## II.   FACTUAL BACKGROUND

Plaintiff Julio Garcia ("Plaintiff" or "Garcia") worked for Defendant Wal-Mart from December 12, 2007, to January 12, 2017, when his employment was terminated. (First Amended Complaint. ("FAC at ¶ 4, 10). On the date of his termination, Plaintiff clocked in for work at 3:12 pm. (McChristian Dec. ¶ 21). Plaintiff was called into the office seven minutes after he clocked in and was told that his employment was being terminated. (Garcia Depo. 39:12; 39:24-40:1). The termination meeting lasted approximately 3 minutes. (Garcia Depo. 48:6). Plaintiff testified that he walked out of the meeting without clocking out. (Garcia Depo. 49:5-11.) Garcia stated that he was at the store between 20 minutes and one hour on the day he was terminated. (Garcia Depo. 62:4-14). Another employee clocked Garcia out at 4:12 pm, one hour after he clocked in. (McChristian Dec. ¶ 21). Plaintiff did not collect his final check at the meeting, but it was mailed to him along with a Statement of Final Pay ("SOFP"). (Garcia Depo. 67:4-11).

According to Garcia, the SOFP reflected 22.59 regular hours at his rate of $15.40 per hour. (Garcia Depo 68:4-16). The SOFP also listed .8 hours of overtime. (Garcia Depo. 69:5-14). In addition, the SOFP designated four hours as Reporting Time pay that accrued on Garcia's termination date per company policy, even though he worked less than an hour. (Garcia Depo. 69:16-24). He was also paid for 17.33 hours of unused personal time, and 28.49 hours of Paid Time Off ("PTO"). (Garcia Depo 73:21-25). Approximately two weeks later, on January 26, 2017, Plaintiff received a payment of $12.19 along with a statement of earnings that reflected one additional hour of regular earnings and .1 hour of PTO when compared to his SOFP. (Oppo. at 6-7; Diana

McChristian Depo. 54:4-9). Plaintiff alleges that the delayed payment of these wages violates California Labor Code §§ 201, 203.

Defendants argue that Plaintiff was paid all the wages earned and owed to him at the time of termination, and therefore, no waiting time penalties are triggered under Labor Code § 203. Defendants' further argue that Plaintiff's PAGA claim fails because it is derivative of his first claim.

### III. LEGAL STANDARD

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The party seeking summary judgment bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322–23. If the moving party fails to discharge this initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party meets the initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elect. Indus. Co., Ltd. v Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, the nonmoving party must "go beyond the pleadings" and by "the depositions, answers to interrogatories, and admissions on file," designate "specific

facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

The court must draw all inferences from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita*, 475 U.S. at 587. "Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

"[T]he district court may limit its review to the documents submitted for the purpose of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001). The court is not obligated "to scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996) (*citing Richards v. Combined Ins. Co. of Am.*, 55 F.3d 247, 251 (7th Cir. 1995)).

**IV.   DISCUSSION**

*A. Waiting Time Penalty under California Labor Code §§ 201, 203*

Defendants first argue that Plaintiff is not entitled to waiting time penalties under California Labor Code §§ 201 and 203 because he did not earn the additional one hour of wages and attendant PTO of .1 that he received two weeks after his termination. (Mot. at 5). Instead, Defendants contend that the payroll system mistakenly paid Garcia for one hour of "clocked" time from his final day of work because he did not clock out. (*Id.* at 3, 6)., Defendants state Garcia was paid for all the hours he had earned up to the day of termination, and was also paid a four hour Reporting Time payment to cover the maximum amount of time he would spend at work on his last day, as shown in Plaintiff's SOFP. (*Id.* at 6). Defendants claim that the one hour of wages and .1 of PTO was a duplicate payment for his last day at work. *(Id.* at 6). In support of their argument, Defendants note that if another employee had not clocked Garcia out, he would have continued to be on the clock until the system automatically clocked him out at midnight, which would have resulted in payment of over ten hours of regular wages, in addition to

5

meal breaks, and overtime, despite the fact that he was only on the premises for approximately twenty minutes that day, which reveals the "ludicrous" nature of his argument. (Reply at 10-11). According to Defendants, Plaintiff admitted in his deposition he was paid all earned wages at the time of his termination and did not know why he was paid the additional $12.19. (Mot. at 5-6).

Plaintiff disagrees and argues that he earned both the four hours of Reporting Time for his last day and the additional hour of regular wages and .1 hour of PTO for clocking in on his last day. (Opposition at 15-16). As a result, Plaintiff contends he is entitled to penalties for Defendants' failure to pay him on his last day for the one hour he worked and PTO he accrued that day. (*Id*. at 17).[1]

California Labor Code §201 requires that an employer pay an involuntarily terminated employee all earned wages on the employee's last day of employment. Cal. Lab. Code § 201. If earned wages are not paid at the time of termination, Labor Code §203 requires the employer to pay waiting time penalties if the failure to pay was "willful." Cal. Lab. Code § 203; *Choate v. Celite Corp*., 215 Cal.App.4th 1460, 1467

---

[1] Plaintiff further seeks judicial notice of an article titled "Grand Theft Paycheck: The Large Corporations Shortchanging Their Worker's Wages" published by Jobs with Justice Education Fund. (Req. at 2 [ECF No. 82-2.]) Defendants oppose this request, arguing that the article does not meet the criteria for judicial notice under Rule 201(b) because it mischaracterizes the statistics that Walmart has paid more than $1.4 billion in fines and settlements as "wage theft penalties." (Reply, Obj. Req. Jud. Notice [83-1.])

Judicial notice is appropriate only for undisputed and relevant documents. Fed.R.Ev. §201(b). "Pursuant to Federal Rule of Evidence 201, [the courts] may also take judicial notice of matters of public record, but not of facts that may be subject to reasonable dispute." *United States v. Corinthian Colleges*, 655 F.3d 984, 998-99 (9th Cir. 2011) (internal quotation marks and citations omitted).

The article in question was published by the organization Jobs with Justice Education Fund, a non-profit with the stated goal of "leading the fight for workers' rights" and "leading strategic campaigns." Jobs with Justice, https://www.jwj.org/about-us/jobs-with-justice-education-fund. In the article, it states that Walmart "has paid far and away the most in wage theft penalties" with "more than $1.4 billion in fines and settlements since 2000." *Id*. at 8. The characterization of the awards given by Walmart is disputed by the parties, and the publishing organization is not a neutral observer, instead it is dedicated to advancing the interests of workers. For these reasons, the Court DENIES Plaintiff's request, finding that the article does not meet the requirements for judicial notice under Federal Rules of Evidence § 201(b).

1  (2013).  The statute provides that "the wages of the employee shall continue as a penalty
2  from the due date thereof at the same rate until paid or until an action therefor is
3  commenced; but the wages shall not continue for more than 30 days."  Cal. Lab. Code §
4  203(a). An employer acts "willfully" if the employer "intentionally fails to pay wages to
5  an employee when those wages are due." 8 Cal.Code Regs., § 13520, subd. (a). If a good
6  faith dispute exists as to whether any wages are due, the imposition of waiting time
7  penalties under Section 203 is precluded.  (*Id*.); *Choate*, 215 Cal.App.4th at 1468
8  (holding that an employer's reasonable, good faith belief that wages were not owed to the
9  discharged employee negated a finding of willfulness in failing to pay).

10       The primary issue for purposes of the present motion is whether Plaintiff was owed
11  one hour of wages and .1 hour of PTO for clocking in on his last day of work, as
12  penalties would only accrue if Defendants owed him these wages and he was paid after
13  his termination. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect
14  the outcome of the suit under the governing law will properly preclude the entry of
15  summary judgment.") It is uncontested that Plaintiff clocked in on his final day of work,
16  and that because he abruptly left the termination meeting without clocking out, another
17  employee clocked him out one hour after he originally clocked in. As a result, the payroll
18  system credited him with one hour of regular pay, and the attendant .1 of PTO which was
19  paid to him in the next pay cycle on January 26, 2017, about two weeks after his
20  termination. It is unclear from the evidence presented whether Plaintiff was entitled to
21  both the Reporting Time pay and the additional one hour of wages and PTO.

22       According to Diana McChristian, Walmart's Senior Director of Payroll Global
23  Business Services, there are different procedures for employees who clock-in on the day
24  they are terminated versus those who never clock in. McChristian stated that if an
25  employee who is to be terminated has not clocked-in on the last day, the payroll system
26  prompts the manager handling the termination to "enter reporting time hours."
27  (McChristian Dec. ¶ 8).  According to McChristian, the final payroll process can take up
28  to two hours, therefore most managers estimate clock-out times that are at least four

hours.  (McChristian Dec. ¶ 10).   Here, Garcia's Statement of Final Pay, issued on the date of his termination, January 12, 2017, included four hours of Reporting Pay, apparently in anticipation of him not clocking in and the time it would take to complete the termination process.

In contrast, if the Walmart employee has clocked-in on the final day, McChristian stated that the manager is "prompted to enter a number of hours that the employee may remain on the clock before the termination process is fully completed. The number of projected hours that on-clock employees may work before the termination process is completed is also referred to as "will work" hours." (McChristian Dec. ¶ 8).  Because Garcia also clocked-in on his last day of work, he appears to have earned "will work hours" which covered the same time frame. Although Walmart's policy requires the manager to enter a total number of "will work" hours that an employee who has clocked-in may remain on the clock on his last day, here Defendants have not provided evidence that management did this step. Instead, Defendants contend that the additional hour was a "ghost" hour, generated as a result of Garcia not clocking out, and that the four hours of Reporting Time pay was full compensation for his last day.  (Mot. at 3-4).

Defendants claim that Industrial Welfare Commission Wage Order 7-2001, Section 5(A) and *Price v. Starbucks Corp*., 192 Cal.App.4th 1136 (2011), support their reading of the reporting time statute, contending that it only allows for reporting time and not for hourly compensation for the same hours for which reporting pay has been received. (Reply at 5-7).

As a primary matter, Section 5(A) outlines the reporting pay requirements and states:

> Each workday an employee is required to report for work and does report, but is not put to work or is furnished less than half said employees' usual or scheduled day's work, the employee shall be paid for half the usual or scheduled days' work, but in no event for less than two (2) hours nor more than four (4) hours, at the employees' regular rate of pay, which shall not be less than the minimum wage.

Cal. Code Regs., § 11050 subd. 5(A).

In *Price*, a former hourly Starbucks employee brought a putative class action seeking to recover unpaid wages, penalties, and damages for violations of the California Labor Code, including failure to pay timely wages upon termination and failure to pay an additional hour of reporting time pay on the day he was fired. *Price*, at *1139-40. Price missed a scheduled shift on November 11, 2007, and was called in for a meeting on November 16, 2007 by his manager to "have a talk." *Id*. at *1140. Price was not scheduled to work on the day of the meeting, but he agreed to come in, and testified that the meeting lasted about 45 seconds, after which he received two hours of regular pay at his hourly rate. *Id*. Price argued that Starbucks should have paid him for 3.3 hours at his regular rate of pay, which was the average of his scheduled shifts, instead of for two hours, for reporting on the day he was fired. *Id*. at 1145. In determining the proper calculation of reporting time hours, the Court focused its analysis on the wording of the statute and concluded that the regulation creates two categories of employees: those who reported for work expecting to work a shift, and those who reported without expecting to work. *Id*. at 1145-46. The Court held that Price fell into the category of employees who are "called into work on their day off for a scheduled meeting" which meant he was entitled to the minimum payment of two hours of reporting time, and that Starbucks complied with section 5(A). *Id*. at 1146.

The Court finds *Price* unpersuasive. In *Price* the Court used the distinction between employees who report to work expecting to work and those who do not expect to work to determine the proper number of reporting time hours, but did not address the issue at hand, whether an employee is entitled to Reporting Time pay *and* pay for the time he was present and clocked-in on his last day. Moreover, unlike Garcia, who appears to have clocked in for a regular shift on the day he was terminated, Price did "not report to work with the expectation that he would work a scheduled shift, but rather was scheduled to attend a meeting for an unspecified number of hours." *Id*. at 1147. When

Garcia clocked in on his last day it triggered termination procedures, according to McChristian's testimony, which were not at issue in *Price*.

Although Plaintiff contends that Defendants' witness McChristian conceded that the .1 hour of PTO was undisputedly earned by Plaintiff, this is a mischaracterization of her testimony. In her Declaration, McChristian stated that the SOFP reflected payment of all wages earned up through January 12, 2017, "including the undisputed amount of PTO time." (McChristian Dec. ¶ 17). When she was asked whether the .1 PTO was a disputed amount of earned PTO time, she answered: "I think it's undisputed, but that's what I would categorize it because Mr. Garcia would not have even known about it at the point of termination, so I don't know how it could be disputed." (McChristian Depo at 67:22-25). Contrary to Plaintiff's assertion, it appears that McChristian was not referencing the current dispute between the parties as to whether Plaintiff earned the .1 PTO hour in the first place, but that Garcia wouldn't have been able to argue or dispute whether he had earned the .1 PTO hour at the time of his termination because he was unaware of it on the final day.

Defendants have failed to meet their initial burden on summary judgment because it is unclear from Defendants' evidence, including McChristian's testimony, whether Plaintiff earned regular wages plus PTO on his last day. As a result, a genuine issue of material fact exists regarding whether Plaintiff was entitled to the one hour of regular wages plus the .1 PTO earned on that hour which would trigger waiting time penalties under § 203. *See Celotex Corp.,* 477 U.S. at 322. As a result, the Court cannot reach the issue of whether Walmart "willfully" failed to pay those wages in violation of California Labor Code § 203, or if they had a good faith, reasonable belief that Garcia was not entitled to the one hour of wages and the .1 hour of PTO time. *See Choate*, 215 Cal.App. 4th at 1468. Accordingly, Defendant's motion for partial summary judgment is denied.

//
//
//

### B. California Labor Code § 2698 et seq., the Private Attorney General Act ("PAGA")

In claim two of the First Amended Complaint, Plaintiff seeks recovery of all civil penalties for Defendant's violation of Labor Code sections 201 and 203 as a "proxy for the State of California and on behalf of other Aggrieved Employees." (FAC at ¶ 31).

Defendants argue that Plaintiff's claim seeking penalties under PAGA fails because it is derivative of his first claim.

In light of the Court's finding that a genuine issue of material fact exists as to whether Plaintiff was entitled to the one additional hour of wages and .10 of PTO, and whether the late payment of those wages violated Labor Code sections 201 and 203, Defendant's motion for partial summary judgment is denied as to the PAGA claim.

### V. CONCLUSION AND ORDER

For the foregoing reasons, the Court denies Defendants' motion for partial summary judgment and request for judicial notice.

**IT IS SO ORDERED.**

Dated: September 22, 2021

_____
Hon. M. James Lorenz
United States District Judge