1  Jennifer A. Kearns (SBN 125588)
   Aaron T. Winn (SBN 229763)
2  **DUANE MORRIS LLP**
3  750 B Street, Suite 2900
   San Diego, CA 92101-4681
4  Tel: 619 744-2242 (Kearns direct)
   Tel: 619 744-2222 (Winn direct)
5  E-mail: jkearns@duanemorris.com
          atwinn@duanemorris.com
6
7  Attorneys for Walmart

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIO GARCIA, individually and on behalf of all those similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WAL-MART ASSOCIATES, INC., a Delaware corporation; WAL-MART STORES, INC., a Delaware corporation; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 3:18-cv-00500-L-MDD<br><br>**MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF WALMART'S MOTION TO DECERTIFY CLASS ACTION AND DISMISS PAGA CLAIMS**<br><br>Date: December 13, 2021<br>Time: 10:30 a.m.<br><br>Courtroom: 5B (5th Floor)<br>Judge: Hon. M. James Lorenz<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY COURT** |

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................5

BACKGROUND ....................................................................................................7

 A. Garcia's allegations. ............................................................... 7

 B. The Court's class certification order. ...................................... 7

 C. The Court's summary judgment order. ................................... 8

ARGUMENT ........................................................................................................10

 A. Decertification is warranted because there is no commonality. ............................................................................ 11

 B. Decertification is warranted because individualized issues swamp any common ones. ...................................................... 14

 C. Decertification is warranted because the myriad individualized issues make a manageable trial plan impossible. ............................................................................... 17

 D. Garcia's PAGA claims are also unmanageable. .................... 18

CONCLUSION ......................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*In re Autozone, Inc. Wage and Hour Employment Practices Litig.*
No. 3:10-md-02159-CRB, 2016 WL 4208200 (N.D. Cal. Aug. 10, 2016) ........................................................................................... 7

*Davidson v. O'Reilly Auto Enters., LLC*
968 F.3d 955 (9th Cir. 2020) ............................................................ 14

*Delgado v. MarketSource, Inc.*
No. 17-CV-07370-LHK, 2018 U.S. Dist. LEXIS 214603 (N.D. Cal. Dec. 20, 2018) .................................................................. 11, 14-16

*Gen. Tel. Co. of Sw. v. Falcon*
457 U.S. 147 (1982), 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982) ..... 10-11

*Harris v. Best Buy Stores, L.P.*
No. 17-cv-00446-HSG, 2018 U.S. Dist. LEXIS 139191 (N.D. Cal. Aug. 16, 2018) ....................................................... 9, 13-15, 17-18

*Marlo v. United Parcel Serv., Inc.*
251 F.R.D. 476 (C.D. Cal. 2008), *aff'd*, 639 F.3d 942 (9th Cir. 2011) ............................................................................................... 10

*Marlo v. United Parcel Serv., Inc.*
639 F.3d 942 (9th Cir. 2011) ............................................................ 10

*Mevorah v. Wells Fargo Home Mortg. (In re Wells Fargo Home Mortg.)*
571 F.3d 953 (9th Cir. 2009) ............................................................ 16

*O'Connor v. Boeing N. Am., Inc.*
197 F.R.D. 404 (C.D. Cal. 2000) ..................................................... 10

*Ochoa v. McDonald's Corp.*
No. 3:14-cv-02098-JD, 2016 U.S. Dist. LEXIS 88323 (N.D. Cal. July 7, 2016) ......................................................................... 11, 18

*Ogiamien v. Nordstrom, Inc.*
No. 2:13–CV–05639–ODW–JCG, 2015 WL 773939 at *4 (C.D. Cal. Feb. 24, 2015) ................................................................ 13

*Sarmiento v. Sealy, Inc.*
No. 18-cv-01990-JST, 2020 U.S. Dist. LEXIS 147307 (N.D. Cal. May 27, 2020) ....................................................................... 14-15

3

*In re Taco Bell Wage & Hour Actions*
   No. 1:07-cv-01314-OWW-DLB, 2011 U.S. Dist. LEXIS
   109169 (E.D. Cal. Sep. 26, 2011) .........................................................16

*United Steel v. ConocoPhillips Co.*
   593 F.3d 802 (9th Cir. 2010) ...............................................................10

*Wal-Mart Stores, Inc. v. Dukes*
   564 U.S. 338 (2011) ................................................................7, 11, 13

**California Cases**

*Choate v. Celite Corp.*
   215 Cal. App. 4th 1460 (2013) ..............................................................5

*Price v. Starbucks Corp.*
   192 Cal. App. 4th 1136(2011) ...............................................................9

*Schachter v. Citigroup, Inc.*
   47 Cal. 4th 610, 101 Cal. Rptr. 3d 2, 218 P.3d 262 (2009) ...................9

*Wesson v. Staples the Office Superstore, LLC*
   68 Cal.App.5th 746, 762-63 (2021) .....................................................18

**State Statutes**

Cal. Lab. Code § 201 ................................................................... 13-15

Cal. Lab. Code § 202 ......................................................................15

Cal. Lab. Code § 203
   ................................................................................. 5, 7, 12-14, 17

Cal. Lab. Code § 2698 *et seq.* ...................................................................7

**Rules**

Fed. R. Civ. Proc. 23(c)(1)(C) ...................................................................10

Rule 23................................................................................. 7, 10, 18-19

Rule 23(a) ...............................................................................11, 14

Rule 23(b)(3) ................................................................................14

# INTRODUCTION

When Plaintiff Julio Garcia was terminated, he left without clocking out. (ECF No. 91, at p. 3.) As a result, Walmart's timekeeping system erroneously assumed that Garcia was still working, and Walmart's automatic payroll systems mistakenly paid Garcia $12.19 for this unworked "ghost" time. (*Id.*) Although Garcia admittedly did not clock out before leaving the store, he claims that Walmart owes him waiting time penalties under California Labor Code § 203[1] for not including the $12.19 in his final paycheck. (ECF No. 25, at ¶¶ 10, 26.)

Walmart moved for summary judgment, arguing that it could not be liable for waiting time penalties because Garcia was not entitled to wages for post-termination time that *he did not work* and Walmart could not pay "wages" at termination for time that was allegedly worked *after* termination. (ECF No. 80.)

In an eleven-page decision, the Court identified several of the relevant factual questions, and found—for some of the questions—that there were material factual disputes that precluded summary judgment. (ECF No. 91.) The Court explained, for example, that it is "unclear . . . whether Plaintiff earned regular wages plus PTO on his last day," and, if so, whether "Walmart 'willfully' failed to pay those wages" or if Walmart "had a good faith, reasonable belief that Garcia was not entitled to the [post-termination pay]." (ECF No. 91, at p. 10.)

As the summary judgment briefing shows, answering these questions is not simple—even when looking at the experiences of even a single

---

[1] California Labor Code § 203 authorizes waiting time penalties where an employee proves that both (1) he was owed wages <u>and</u> (2) the employer willfully failed to pay all earned wages at the time of termination. Cal. Lab Code § 203; *Choate v. Celite Corp.*, 215 Cal. App. 4th 1460, 1468 (2013).

plaintiff. Nor would resolving those questions for Garcia provide a common answer for any of the other 55,000+ class members in this action. Rather, the same type of detailed and individualized inquiries that are necessary to resolve Garcia's claims would be required *for each class member.*

The summary judgment briefing and order references some of the relevant questions for which there is no common answer. (*See, e.g.*, ECF 91 at 6-10.) For example, why did the associate receive a post-termination payment? (*Id.* at 7.) Did the associate give notice or was the associate fired? (*Id.* at 7-8.) Was the associate scheduled to work that day, and if so, for how long? (*Id.* at 8.) Did the associate clock in before the termination meeting? (*Id.*) How early in the shift did the termination occur and how long did the termination meeting last? (*Id.*) Did the associate clock out before leaving the store? (*Id.*) Did the associate receive reporting time pay? (*Id.* at 9-10.) If so, how much? (*Id.*) Was the associate paid for all hours worked on his final day? (*Id.*) If not, why not? (*Id.*) Did the associate acknowledge having received wages for all hours worked? (*Id.* at 6.) If the associate received post-termination pay, was the post-termination pay earned or calculable at the time of termination? (*Id.* at 7-10.) Was there any dispute regarding the hours allegedly worked and the wages allegedly owed at the time of termination? (*Id.* at 10.) How were those disputes resolved? (*Id.*) And so forth.

When moving for class certification, Garcia promised the court that these questions—and many more like them—could be "easily" answered using common proof. But the summary judgment briefing shows that Garcia's class-certification promise is a myth: the key questions for determining liability for waiting time penalties are not amenable to common proof or class-wide resolution; they are inherently *individual.*

Because it is now clear that these questions are not susceptible to class-wide proof that will "generate common answers," the Court should decertify Garcia's class claims. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (noting that viable class claims must be susceptible to class-wide proof that will "generate common answers"); *In re Autozone, Inc. Wage and Hour Employment Practices Litig.*, No. 3:10-md-02159-CRB, 2016 WL 4208200 at *13 (N.D. Cal. Aug. 10, 2016) (granting motion for decertification when it became clear that Plaintiff's claims could not be adjudicated using class-wide proof). And for the same reason, the Court should dismiss Garcia's PAGA claims as unmanageable.

# BACKGROUND

### A.  Garcia's allegations.

On January 12, 2017, only 7 minutes after his shift began, Walmart terminated Garcia's employment. (ECF No. 91, at p. 3.) The termination meeting lasted about 3 minutes, Garcia then left the store without clocking out, and Walmart mailed Garcia his final paycheck. (*Id.*) Roughly two weeks later, Garcia received a post-termination payment of $12.19. (*Id.*)

Garcia assumes that the post-termination payment reflects earned wages and thus alleges that Walmart willfully failed to pay all earned wages at the time of termination. (ECF No. 25.) As a result, Garcia seeks (1) waiting time penalties under California Labor Code § 203, and (2) PAGA penalties under Labor Code § 2698 *et seq.* (*Id.*)

### B.  The Court's class certification order.

When Garcia moved to certify his Section 203 claims for class treatment, he assured the Court that his claims "easily" satisfied all Rule 23 requirements. (ECF No. 34 [repeating 7 times how "easily" it would be to simultaneously adjudicate all class claims].) According to Garcia, the Court could adjudicate the entire dispute "without testimony from any

class member" because the Court could simply assume that any post-termination payment was *necessarily* late. (*Id.*, at p. 21.) All that was required, Garcia argued, was for the Court to "review the date of termination/separation of each class member, compare that to the date that any subsequent final wages were paid, and multiply the class member's daily wage by the number of days the employee was paid late." (*Id.*, at p. 20.)

Based on Garcia's reassurances that these claims could be "easily" adjudicated using common proof, the Court certified a class consisting of all California Walmart employees "whose employment ended at any time from February 1, 2015, through the present [August 26, 2019], and who received a Statement of Final Pay and then received any additional wages (regular, overtime and/or vacation) on Defendants' on-cycle payroll immediately subsequent to the issuance of the Statement of Final Pay." (ECF No. 48, at p. 8.)

The court also certified a subclass consisting of California Walmart employees "whose employment ended at any time from February 1, 2015, through [August 26, 2019], and who received a Statement of Final Pay and then received any additional wages (regular, overtime and/or vacation) more than 3 days after the issuance of the Statement of Final Pay on Defendants' on-cycle payroll immediately subsequent to the issuance of the Statement of Final Pay to the individual." (ECF No. 48, at p. 8.)

**C.    The Court's summary judgment order.**

After the parties conducted further discovery, Walmart moved for summary judgment. (ECF No. 80.) Walmart argued that it was entitled to judgment as a matter of law because Garcia's post-termination payment was not "wages" in any sense of the word; rather, it was a mistaken *overpayment* triggered by Garcia's failure to clock out after being

8

terminated. (ECF No. 80-1.) Because Garcia did not clock out before leaving the store (in violation of Walmart's timekeeping policy), the timekeeping system continued to accrue hours *as if Garcia was still working*. (*Id.*, at pp. 6-7.) This "ghost" time amounted to $12.19 in *unearned* wages. (*Id.*, at pp. 6-7.)

Because this "ghost" time corresponded to time "worked" *after* termination, that time could not have been included in Garcia's final paycheck; instead, Walmart's payroll system automatically (and mistakenly) issued a check for this post-termination time in the next on-cycle payroll. (*Id.*, at pp. 6-7.) As this money was admittedly never earned, Walmart argued that making this overpayment could not, as a matter of law, constitute a failure to timely pay all wages due at termination. (*Id.*, at pp. 8-9; *see also Schachter v. Citigroup, Inc.*, 47 Cal. 4th 610, 622, 101 Cal. Rptr. 3d 2, 12, 218 P.3d 262, 270 (2009) ("The only thing that has not been 'paid' is something [the plaintiff] never 'earned' . . .[so Plaintiff] has no claim under [sections] 201 or 202."); *Harris v. Best Buy Stores, L.P.*, No. 17-cv-00446-HSG, 2018 U.S. Dist. LEXIS 139191, at *20-21 (N.D. Cal. Aug. 16, 2018) (no violation of law for mistakenly making a duplicate payment to employee).

Garcia presented a different story—that he somehow *earned* the additional $12.19; and a novel legal theory—that by virtue of getting fired for cause, he was entitled to reporting time pay plus any time "on the clock").[2] (ECF No. 82, at pp. 15-17.)

The Court's summary judgment order devoted several pages discussing the parties' evidence and respective positions. (ECF No. 91.)

---

[2] Garcia's reporting-time arguments highlight several individualized inquires, including the employee's schedule and hours actually worked; whether the employee resigned or was terminated; etc. *See Price v. Starbucks Corp.,* 192 Cal. App. 4th 1136(2011).

The Court then explained that it could not grant summary judgment because "it is unclear . . . whether Plaintiff earned regular wages plus PTO on his last day." (*Id.*, at p. 10.) The Court concluded that these factual disputes also made it impossible for the Court to assess "whether Walmart 'willfully' failed to pay [any earned] wages" or whether Walmart "had a good faith, reasonable belief that Garcia was not entitled to the [$12.19]." (*Id.*)

# ARGUMENT

District courts "retain[] the flexibility to address problems with a certified class as they arise, including the ability to decertify" a class. *United Steel v. ConocoPhillips Co.*, 593 F.3d 802, 809 (9th Cir. 2010); *see also Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982), 102 S. Ct. 2364, 72 L. Ed. 2d 740 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation."); Fed. R. Civ. Proc. 23(c)(1)(C) (an order certifying a class "may be altered or amended before final judgment").

"In considering the appropriateness of decertification, the standard of review is the same as a motion for class certification: whether the Rule 23 requirements are met." *Marlo v. United Parcel Serv., Inc.*, 251 F.R.D. 476, 479 (C.D. Cal. 2008), *aff'd*, 639 F.3d 942 (9th Cir. 2011) (*citing O'Connor v. Boeing N. Am., Inc.*, 197 F.R.D. 404, 410 (C.D. Cal. 2000)). "[A] district court reevaluating the basis for certification may consider its previous substantive rulings in the context of the history of the case, and may 'consider the nature and range of proof necessary to establish the [class-wide] allegations.'" *Id.* at 479-80 (citation omitted). At all times, the plaintiff bears the burden of proving that the requirements of Rule 23 remain satisfied. *Marlo v. United Parcel Serv., Inc.*, 639 F.3d 942, 947-48 (9th Cir. 2011). To do so, the plaintiff must show, through a "rigorous

analysis," that each requirement is met. *Dukes*, 564 U.S. at 350-51; *Gen. Tel. Co. of Sw.*, 457 U.S. at 160 (noting that "actual, not presumed, conformance with Rule 23(a) remains, however, indispensable").

### A. Decertification is warranted because there is no commonality.

"Commonality requires the plaintiff to demonstrate that the class members 'have suffered the same injury[.]'" *Dukes*, 564 U.S. at 349-50 (citation omitted). In other words, their claims must "depend upon a common contention" of such a nature that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* at 350. A common question alone is insufficient. *Id.* Rather, commonality requires "the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.*

A plaintiff who fails to identify "any pattern of officially sanctioned illegal behavior" does not meet this burden. *Delgado v. MarketSource, Inc.*, No. 17-CV-07370-LHK, 2018 U.S. Dist. LEXIS 214603, at *16 (N.D. Cal. Dec. 20, 2018); *see also Ochoa v. McDonald's Corp.*, No. 3:14-cv-02098-JD, 2016 U.S. Dist. LEXIS 88323, at *18-19, 21 (N.D. Cal. July 7, 2016) (denying certification in part because plaintiffs "do not tender any evidence of a standard policy or practice, formal or informal, of denying [class members] their meal and rest breaks," relying instead on time records showing only that breaks did not occur).

Here, the recent summary judgment briefing shows that there is no unlawful common policy or practice. Rather, the briefing reveals that Garcia's own claim—let alone those of all class members—rests on a host of individualized questions: Why was Garcia terminated? Was Garcia paid for all hours worked through the date and time of his termination? How

11

much time did Garcia spend at the store before leaving? Was Garcia entitled to waiting time pay even though he was terminated for cause? Did Garcia earn the $12.19 that he received after termination or was it a mistake stemming from Garcia's admitted failure to clock out? Was the 0.1 hours of PTO that was paid after termination "earned" or does it correspond to the "ghost" time stemming from Garcia's failure to clock out? If the $12.19 payment corresponds to time "worked" after Garcia was terminated, how could Walmart have paid it at the time of Garcia's termination? If there were any "earned wages" that were not paid at termination, did Walmart "willfully" fail to pay those wages (because if not, no waiting time penalties are owed under Labor Code § 203)?

Garcia's briefing attempts to answer some of these questions—but not by resorting to any common proof that can be extrapolated to the entire class. (*See, e.g.*, ECF No. 82, at p. 15, stating "Walmart's argument that the 0.1 PTO hour was never earned and tied to a "ghost" hour must be rejected, because the evidence indicates that (1) Plaintiff actually clocked in to work, (2) Plaintiff was at his work area for at least seven minutes before being called into his termination meeting with the store supervisor, and (3) Plaintiff spent at least 20 minutes to an hour physically at Walmart.").

Rather, as the summary judgment evidence now confirms, adjudicating Garcia's "late payment" claim requires weighing and contrasting testimony from Garcia, his managers, coworkers, and other witnesses familiar with his termination. Because Garcia did not clock out, adjudicating his claim requires comparisons of his hours allegedly worked, the time he spent at the store before leaving, the duration of his termination meeting, the hours paid, the source of PTO payments, his

entitlement (if any) to reporting time pay, and several other related issues that cannot be gleaned merely from the face of documents.

The answers to these questions are unique to Garcia. They do not, and could not, apply to any other class member. So spending the time necessary to resolve all the factual questions bundled up in Garcia's claim would not allow the Court to resolve the claims of any other class members. That is fatal to class certification because commonality requires questions whose answers resolve class claims "in one stroke." *See Dukes*, 564 U.S. at 350. The summary judgment briefing shows that this is not the case here.

This is why courts have found similar late payment claims unfit for certification. In *Harris*, for example, the plaintiff moved to certify a purported "late payment" claim under Labor Code sections 201 and 203 without identifying any common way to determine whether a post-termination payment was unlawful. *Harris*, 2018 U.S. Dist. LEXIS 139191, at *19-21. But the mere fact that an employee received a post-termination payment does not mean the payment was late or unlawful. *Id.* The *Harris* court noted, for example, that a post-termination payment may have never been owed, such as when "a manager forgets to remove an employee from the [Time and Labor Center] system after [termination]" causing employees to "receive a duplicate payment for hours already paid." *Id.* at *20-21.

These types of "individual and unintentional payroll discrepancies," the court explained, "preclude the type of common proof required for class certification." *Id.* at *20; *see also Ogiamien v. Nordstrom, Inc.*, No. 2:13–CV–05639–ODW–JCG, 2015 WL 773939 at *4 (C.D. Cal. Feb. 24, 2015) (class certification denied; "[plaintiff] cannot identify a 'specific company-wide policy or practice that allegedly gives rise to consistent liability;'"

"based on the evidence submitted by the parties, it is not readily apparent that [the employer] has a facially invalid 'uniform policy consistently applied to a group of employees'").

The same is true here. There is nothing unlawful about mistakenly *overpaying* an employee when the employee failed to clock out. So the mere fact that an associate received a post-termination payment is "not determinative of whether a violation of California Labor Code §§ 201 and 203 has occurred." *Delgado*, 2018 U.S. Dist. LEXIS 214603, at *15. Rather, it reflects the type of unintentional payroll discrepancy that precludes class certification. *Harris*, 2018 U.S. Dist. LEXIS 139191, at * 21 ("To the extent that [defendant's] payroll records contain discrepancies, that itself is not evidence of non-compliance with any particular labor code section."); *see also Davidson v. O'Reilly Auto Enters., LLC*, 968 F.3d 955, 967 (9th Cir. 2020) (no commonality where plaintiff herself did not suffer the alleged common injury).

### B. Decertification is warranted because individualized issues swamp any common ones.

Rule 23(b)(3) permits certification of a class only if "the questions of law or fact common to class members predominate over any questions affecting only individual members." Rule 23(b)(3)'s predominance requirement is "even more demanding than Rule 23(a)," "focuses on the relationship between the common and individual issues," and "concerns the degree to which 'fact-intensive' and individualized inquiries predominate over questions common to the class." *Delgado*, 2018 U.S. Dist. LEXIS 214603, at *13 (citations omitted).

The predominance inquiry begins with the elements of the underlying causes of action. *Sarmiento v. Sealy, Inc.*, No. 18-cv-01990-JST, 2020 U.S. Dist. LEXIS 147307, at *12 (N.D. Cal. May 27, 2020). To

determine whether common questions predominate, the court "identifies the substantive issues related to the plaintiffs' claims" and "then considers the proof necessary to establish each element of the claim or defense, and how these issues would be tried." *Id.* at *12-13.

A plaintiff cannot show predominance where "evaluating Defendant's *liability* as to each class member would require individualized assessments of 'each employee's time records, wage statements, and deposition testimony.'" *Delgado*, 2018 U.S. Dist. LEXIS 214603, at *19 (*citing Harris*, 2018 U.S. Dist. LEXIS 139191, at *21) (citation omitted) (emphasis added).

*Harris* is again instructive. There, the court held in a "late pay" claim that mirrors the one Garcia asserts here, that individual issues predominated over common ones because the plaintiff's claim for an allegedly late final payment "entails evaluating how much Defendant owed that employee for hours worked, when they were paid, how many hours the employee actually worked, whether the employee was voluntarily or involuntarily terminated, and the method of payment."[3] *Id.* at *23.

These are the same type of individualized inquiries that the Court highlighted in its order denying summary judgment. (*See, e.g.*, ECF No. 91, at pp. 10.) There are no short cuts. The same type of individualized factual disputes that stymied summary judgment here must be asked of every class member: if there was a post-termination payment, what was the reason for the payment? Did the payment reflect "earned" wages or was it a real-life version of drawing the Bank-Error-In-Your-Favor Monopoly card? Was the associate scheduled to work the day of termination? And so forth.

---

[3] When final wages are due depends upon whether the employee is terminated, quits with 72 hours' notice, or quits without 72 hours' notice. *See* Cal. Lab. Code §§ 201-202.

15

Garcia's own situation underscores this point. (ECF No. 91, at 3-4, 10.) Even after extensive deposition testimony and summary judgment briefing, the Court held that the evidence is still "unclear" as to whether Garcia was paid all wages at termination, how and why Garcia allegedly earned wages *after* his termination, and whether Walmart had a good faith belief that it had properly paid all wages owed. (*Id.*, at p. 10.) For other class members, the situation may involve entirely different issues— such as the payment of bonuses that were not calculable at the time of termination or a bona fide dispute between Walmart and the employee about the amount of wages to be paid (*e.g.*, the amount of vacation or PTO time payable). (*See* ECF No. 35, at pp. 16-18.)

As a result, "mini-trials would be required for each class member to determine whether waiting time penalties should be imposed, including whether an employer acted willfully and whether there is a good faith dispute that wages are due." *In re Taco Bell Wage & Hour Actions*, No. 1:07-cv-01314-OWW-DLB, 2011 U.S. Dist. LEXIS 109169, at *16 (E.D. Cal. Sep. 26, 2011) (denying class certification); *see also Mevorah v. Wells Fargo Home Mortg. (In re Wells Fargo Home Mortg.)*, 571 F.3d 953, 958-59 (9th Cir. 2009) (finding that the district court abused its discretion in certifying a class by disregarding the existence of "potential individual issues that may make class treatment difficult if not impossible"); *Delgado*, 2018 U.S. Dist. LEXIS 214603, at *19 (noting that "factual disputes regarding Plaintiff's termination . . . only reinforce the degree to which fact-intensive, individualized inquiries would predominate in determining Defendant's liability").

### C. Decertification is warranted because the myriad individualized issues make a manageable trial plan impossible.

When seeking class certification, Garcia promised that the Court could adjudicate the class's claims by doing nothing more than "review[ing] the date of termination/separation of each class member, compar[ing] that to the date that any subsequent final wages were paid, and multiply[ing] the class member's daily wage by the number of days the employee was paid late." (ECF No. 34, at p. 20.)

But as Garcia's own situation shows, the mere fact of a post-termination payment does not mean that the payment was late, unlawful, or even earned wages. *See Harris*, 2018 U.S. Dist. LEXIS 139191, at *19-21 (noting examples of post-termination payments that are not unlawful, such as time-keeping errors that resulted in duplicate payments for hours already paid).

Plaintiff's opposition to the summary judgment motion also debunks his premise that the Court could easily adjudicate all claims by merely looking at a document. If that were possible, then Plaintiff's opposition would have certainly pointed to this mythical document. That didn't happen. It did not happen because there are no documents that, on their face, establish liability. In fact, Garcia has yet to provide evidence of even *one* instance of wages owed that were not timely paid—let alone "willfully" not timely paid, which is required for imposition of waiting time penalties under Labor Code § 203.  Even Garcia's ability to prove liability on his own individual claim is fraught with problems and individualized issues as he admittedly did not clock out, does not know where the additional pay could have come from, and cannot explain how he "earned" additional wages *after* he was terminated. (*See* ECF No. 80-1, at pp. 8-9.)

17

Under these circumstances—where time records themselves cannot be used to determine liability—class certification is not manageable. *See Ochoa*, 2016 U.S. Dist. LEXIS 88323, at *21. And the summary judgment briefing here shows that—exactly like *Harris*—the argument that the Court "simply needs to compare the termination date with the final payment date" ignores "numerous other factual findings required to show liability." *Harris*, 2018 U.S. Dist. LEXIS 139191, at *22. As a result, class certification is no longer appropriate.

### D. Garcia's PAGA claims are also unmanageable.

PAGA claims are not subject to the same Rule 23 certification requirements. But PAGA claims that are unmanageable are subject to dismissal. *Wesson v. Staples the Office Superstore, LLC*, 68 Cal. App .5th 746, 762-63 (2021).

In *Wesson*, for example, the trial court dismissed a PAGA claim as unmanageable because it would have required individualized mini-trials to determine whether each "aggrieved employee" was properly classified. *Wesson*, 68 Cal. App. 5th at 773. The Court of Appeal affirmed, explaining that "courts have inherent authority to ensure that a PAGA claim will be manageable at trial" and where the PAGA claim is unmanageable, courts have "the power to strike the claim." *Id.* at 762-63.

Here, Garcia's PAGA claims are derivative of his underlying Labor Code claims. Thus, adjudicating the PAGA claims presents the same problem—there is no way to determine whether any particular employee is entitled to waiting time penalties without engaging in a time-consuming and individualized analysis of their circumstances. That's not manageable. So for the same reasons it should decertify Garcia's class claims, the Court should also dismiss Garcia's representative PAGA claims.

## CONCLUSION

The recent summary judgment briefing and order show that resolving Garcia's late-pay claim requires a fact-intensive, individualized inquiry and that there is no common evidence that could establish class-wide liability. Because determining liability would require individualized inquiries for each class member, the Court should decertify the Rule 23 class and dismiss Garcia's representative PAGA claims.

Dated: November 4, 2021            **DUANE MORRIS LLP**

By: */s/ Aaron T. Winn*
Jennifer A. Kearns
Aaron T. Winn
Attorneys for Walmart