UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIO GARCIA,<br><br>                                    Plaintiff,<br><br>v.<br><br>WAL-MART ASSOCIATES, INC., et al.,<br><br>                                    Defendants. | Case No.:  18-cv-00500-L-MDD<br><br>**CLASS ACTION**<br><br>**ORDER DENYING WALMART'S MOTION TO DECERTIFY CLASS ACTION AND DISMISS PAGA CLAIMS [ECF NO. 96]** |

Pending before the Court is Defendants' Motion to Decertify Class Certification and Dismiss PAGA claims in this class action alleging violations of the California Labor Code. [ECF No. 96.]  Plaintiffs oppose.  The Court decides the matter on the papers submitted and without oral argument.  See Civ. L. R. 7.1(d.1).  For the reasons stated below, the Court **DENIES** Defendants' Motion.

**I.    BACKGROUND**

This is a class action alleging Defendants Wal-Mart Associates, Inc. and Wal-Mart Stores, Inc. (collectively "Defendants") violate California Labor Code §§ 201-203 by failing to pay its separating employees, whether involuntarily terminated or voluntarily

1

resigned, all final wages within the timing requirements set forth by statute. Defendants, the self-proclaimed largest retailer in the world, employ millions of workers worldwide. In California, from February 1, 2015, to November 23, 2018, Defendants terminated 175, 684 workers. On the termination or separation date, Human Resources staff initiates a calculation request to determine the amount to be paid as final wages to the former employee. Defendants provide a written check to the former employee for wages due at the point of termination. At times, Defendants' calculation of the employee's final wages is not based on all wages the employee is owed because Defendants' payroll and timekeeping systems and databases do not reflect all earned wages due and owing to the former employee at the time of termination. As a result, Defendants then pay employees additional wages, earned prior to termination, after the former employee's termination.

Plaintiff filed a First Amended Complaint on September 12, 2018, seeking (1) waiting time penalties under California Labor Code § 203 and (2) penalties under California's Private Attorneys General Act, Labor Code § 2698 *et seq*. ("PAGA") alleging that he was not paid all of his earned wages at the time of termination.

On August 26, 2019, the Court certified a class consisting of:

> All individuals who worked for Defendants in the State of California whose employment ended at any time from February 1, 2015, through the present, and who received a Statement of Final Pay and then received any additional wages (regular, overtime and/or vacation) on Defendants' on-cycle payroll immediately subsequent to the issuance of the Statement of Final Pay to the individual.

(Order at 8 [ECF No. 48.])

This Court also certified the following subclass:

> Any and all individuals who worked for Defendants in the State of California whose employment ended at any time from February 1, 2015, through the present, and who received a Statement of Final Pay and then received any additional wages (regular, overtime and/or vacation) more than 3 days after the issuance of the Statement of Final Pay on Defendants' on-cycle payroll immediately subsequent to the issuance of the Statement of Final Pay to the individual.

(*Id.*)

Named Plaintiff Julio Garcia ("Plaintiff" or "Garcia") worked for Defendant Wal-Mart from December 12, 2007, to January 12, 2017, when his employment was terminated. (First Amended Complaint. ("FAC at ¶ 4, 10). On the date of his termination, Plaintiff clocked in for work at 3:12 pm. (McChristian Dec. ¶ 21). Plaintiff was called into the office seven minutes after he clocked in and was told that his employment was being terminated. (Garcia Depo. 39:12; 39:24-40:1). The termination meeting lasted only a few minutes. (Garcia Depo. 48:6). Plaintiff testified that he walked out of the meeting without clocking out. (Garcia Depo. 49:5-11.) Garcia stated that he was at the store between 20 minutes and one hour on the day he was terminated. (Garcia Depo. 62:4-14). Another employee clocked Garcia out at 4:12 pm, one hour after he clocked in. (McChristian Dec. ¶ 21). Plaintiff did not collect his final check at the meeting, but it was mailed to him along with a Statement of Final Pay ("SOFP"). (Garcia Depo. 67:4-11).

According to Garcia, the SOFP reflected 22.59 regular hours at his rate of $15.40 per hour. (Garcia Depo 68:4-16). The SOFP designated four hours as Reporting Time pay that accrued on Garcia's termination date per company policy. (Garcia Depo. 69:16-24). He was also paid for 17.33 hours of unused personal time, and 28.49 hours of Paid Time Off ("PTO"). (Garcia Depo 73:21-25).

Approximately two weeks later, on January 26, 2017, Plaintiff received a payment of $12.19 along with a statement of earnings that reflected one additional hour of regular earnings and .1 hour of PTO when compared to his SOFP. (Oppo. at 6-7; Diana McChristian Depo. 54:4-9). Plaintiff alleges that the delayed payment of these wages violates California Labor Code §§ 201, 203.

On December 14, 2020, Defendants' filed a motion for partial summary adjudication, contending that the $12.19 post-termination payment to Plaintiff Garcia did not trigger waiting time penalties because it was not "earned", and that his PAGA claim fails because it is derivative of the first claim. [ECF No. 80.] The Court denied

Defendants' motion for partial summary judgment, finding that there was a genuine issue of material fact regarding whether Plaintiff was entitled to the one hour of regular wages plus the .1 PTO earned on that hour, therefore the Court was unable to determine whether waiting time penalties under § 203 were triggered. (Order at 10 [ECF No. 91.])

Defendants now argue that the class should be decertified because determination of Defendants' liability would require individualized assessments of each Plaintiff's time records and would therefore defeat the Rule 23 commonality and predominance requirements. (Mot. at 11, 14). Defendants further argue that both the class claims and PAGA claims are unmanageable because there is no way to determine whether particular employees are entitled to waiting time penalties without engaging in an individualized analysis of their circumstances. (Mot. at 17-18).

## II.   LEGAL STANDARD

Rule 23 provides that "[a]n order that grants or denies class certification may be altered or amended before final judgment." Fed.R.Civ.P. 23(c)(1)C). "A district court may decertify a class at any time." *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009). "A party seeking *decertification* of a class should bear the burden of demonstrating that the elements of Rule 23 have *not* been established." *Slaven v. BP America, Inc.*, 190 F.R.D. 649, 651 (C.D. Cal. 2000) (emphasis in original); *Gonzales v. Arrow Fin. Servs.*, Inc., 489 F. Supp. 2d 1140, 1153 (S.D. Cal. 2007).

In order to determine whether decertification is mandated, a Court must determine whether Defendant has met its burden to show that the requirements of Rules 23(a) and at least one of the requirements of 23(b) are not met.

> Rule 23(a) outlines four requirements, all of which must be met for class certification: (1) the class must be so numerous that joinder of all members is impracticable; (2) there must be questions of law or fact common to the class; (3) the claims or defenses of the class representatives must be typical of the claims or defenses of the class; and (4) the class representatives must fairly and adequately protect the interests of all members of the class.

*United Steel v. ConocoPhillips Co.,* 593 F.3d 802, 809 (9th Cir. 2010*)* (citing Fed.R.Civ.P. 23(a).) The "requirements of Rule 23(a) are commonly referred to as "numerosity," "commonality," "typicality," and "adequacy of representation" (or just "adequacy"), respectively. *Id*.

     A plaintiff's claims must also meet the more stringent requirements under Rule 23(b)(3) which allows class certification when "the questions of law and fact common to the class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3)'s predominance requirement is "even more demanding that 23(a)." *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F.3d 952, 963 (9th Cir. 2013) (internal citation omitted). The predominance inquiry evaluates the degree to which "fact-intensive" and individualized inquiries predominate over any questions common to the class. *Abdullah*, 731 F.3d at 965. The predominance test is satisfied "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *True Health Chiropractic, Inc. v. McKesson Corp*., 896 F.3d 923, 931 (9th Cir. 2018). "A principal purpose behind Rule 23 class actions is to promote efficiency and economy of litigation." *In re Wells Fargo Home Mtg. Overtime Pay Litigation*, 571 F.3d, 953, 958 (internal quotation marks omitted).

     Under Rule 23(b)(3) a plaintiff must also demonstrate "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The superiority inquiry includes consideration of

> "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation in the particular forum; and (D) the likely difficulties in managing a class action."

Fed. R. Civ. P. 23(b)(3)(a)-(d). A Court must determine that "classwide litigation of common issues will reduce litigation costs and promote greater efficiency." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). "If each class member has to

litigate numerous and substantial separate issues to establish his or her right to recover individually a class action is not superior." *Zinser v. Accufix Research Inst., Inc.,* 253 F.3d 1180, 1192 (9th Cir. 2001).

### III. DISCUSSION

Defendants argue that Plaintiff's claims for violation of Labor Code § 203 do not satisfy Rule 23's commonality requirement because (1) Plaintiff has failed to identify an unlawful policy or practice that sanctions illegal conduct, and (2) resolution of the claims would require an individualized determination, indicating the claims are not amenable to common proof or class-wide resolution. (Mot. at 6.) Specifically, Defendants contend that adjudicating Plaintiff Garcia's "late payment" claim would require weighing and contrasting testimony from Garcia, his manager, coworkers, and other witnesses, and the answers to those inquiries would apply only to Garcia's claim, and not to other class members. (*Id*. at 12). Defendants argue that "the mere fact that an employee received a post-termination payment does not mean the payment was late or unlawful." (*Id*. at 13). These types of individual and unintentional payroll discrepancies are not amenable to common proof in Defendants' view. (*Id*. at 13). In addition, Defendants claim that the need for individualized determinations of liability as to each class member would also defeat the predominance requirement of Rule 23(b)(3). (*Id*. at 15).

Plaintiff contends that any payment of earned wages after termination date is unlawful and can be determined by reference to Defendants' time and payroll records, therefore resolution of the question presented is common to all class members. (Opposition at 6). In addition, Plaintiff points to documentary evidence provided by Defendants that allegedly confirms there was a stated policy requiring any additional hours after the employee's final payout to be paid in the next scheduled pay period in violation of law. (*Id*. at 12).

### A. Rule 23(a)(2) Commonality

The commonality inquiry depends on whether a claim is "of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity

6

will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "In determining that a common question of law exists, it is insufficient to find that all putative class members have suffered a violation of the same provision of law *Id*.

When certifying the present class and subclass, this Court found that Rule 23's commonality requirement was met because the question:

> [w]hether the post-termination wages departed employees received after their termination were wages earned prior to termination is an essential element of the class claim. *See* Cal. Labor Code §§ 201-203. Defendants use a system where former employees receive oncycle wage statements on the next regular scheduled payroll date after termination. However, if the wages paid after termination are not earned wages, all class members' claims would fail. This issue is therefore common to all putative class members, and its resolution is central to the validity of each of their claims.

(Order Granting Motion for Class Certification at 5 [ECF No. 48.]

The statute is clear that waiting time penalties accrue if earned wages are not paid at the time of termination and if the failure to pay was "willful." Cal. Lab. Code §§ 201, 203; *Choate v. Celite Corp.*, 215 Cal.App.4th 1460, 1467 (2013). The statute provides that "the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." Cal. Lab. Code § 203(a).

Here, the evidence suggests that Wal-Mart regularly made payments to employees after the date of termination. Plaintiff's expert found that 48,798 former employees were paid additional wages after they received their final pay statement and 14,169 were paid PTO wages after termination. (Oppo at 5). Consequently, there is a common question germane to the resolution of the claims of all class members regarding whether they were paid earned wages after the date of termination.

In addition, newly produced evidence shows that Defendants' maintained a written policy which appears to indicate that that under certain circumstances, terminated

employees are paid after the date of termination. On December 14, 2021, after fact discovery closed on November 2, 2020, Defendants produced various policy documents, one of which states: "If additional hours should be provided to the Associate (at termination), and the associate has left the facility, the facility can enter any additional hours into the Time and Attendance system, and a check will be sent to the facility on the *next scheduled payday*." (WM-GARCIA00055535-0005536, attached to Declaration of Larry W. Lee as Exhibit C)(emphasis added). Whether Defendants had a stated policy that resulted in late paid wages is a question whose answer could potentially provide a classwide resolution. *Dukes*, 564 U.S. at 350.

Defendants argue that determining if each class member "earned" the late paid wages defeats the commonality requirement because the answer to this question requires an individualized determination and cannot be determined by reference to payroll and other records. However, Rule 23(a)'s commonality requirement can be satisfied where the class members' claims rest on a "common contention" such as the assertion that Defendants made late payments to them of earned wages after the date of termination in violation of section 203. *Id*.

Defendants further argue that the late payments reflect unintentional payroll discrepancies and do not conclusively demonstrate violations of California Labor Code §§ 201 and 203. While the circumstances underlying Garcia's claims present a challenge to the employer for purposes of compliance with section 203, the large number of employees who were paid after termination suggest that the practice is more than "unintentional payroll discrepancies." For the above reasons, the Court finds that Plaintiff's claims satisfy the commonality requirement of Rule 23(a)(2).

B. *Rule 23(b)(3) Predominance*

Rule 23(b)(3) requires two separate inquiries: (1) do issues common to the class "predominate" over issues unique to individual class members, and (2) is the proposed class action "superior" to other methods available for adjudicating the controversy. See Fed. R. Civ. P. 23(b)(3).

Defendants argue that decertification is warranted because individualized issues swamp any common ones, noting that this Court highlighted these issues in the order denying summary judgment. (Mot. at 15.) Specifically, Defendants contend that in order to determine whether a class member was entitled to wages paid after termination, the Court would need to discover the reason for the payment, if the payment represented "earned" wages, and whether the associate was scheduled to work the day of termination. (*Id*.) Defendants contend that "[f]or other class members the situation may involve entirely different issues- such as the payment of bonuses that were not calculable at the time of termination or a bona fide dispute between Walmart and the employee about the amount of wages to be paid (e.g. the amount of vacation or PTO time payable." (*Id*. at 16). In light of the individualized nature of these inquiries, Defendants claim that "mini-trials" would be necessary to determine whether waiting time penalties are owed to each class member. (*Id*.)

In his Opposition, Plaintiff argues that courts have repeatedly held that wage and hour class actions can be certified based on the employer's records where common questions predominate. (Opposition at 14-15 [Doc. No. 122.]) He elaborates that all that is required to adjudicate a claim under Labor Code § 203 is a calendar and proof that the employer acted willfully, citing *Livadas v. Bradshaw*, 512 U.S. 107 (2018). (*Id*. at 15). Plaintiff points to Walmart's PTO policy as an example of wages earned that he, and other class members, were not paid until after termination. In Plaintiff's view, the facts underlying his entitlement to the PTO wages are immaterial, and therefore not fatal, because the common issue among class members is whether wages were unlawfully paid after termination. (*Id*. at 18-19).

1. *Predominance*

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. "Although there may be 'some variation' among individual plaintiffs' claims, Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a). *Abdullah*,

731 F.3d at 963 (internal citations omitted). "[T]he focus of Rule 23(b)(3) is on the predominance of common *questions*." *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S. 455, 466 (2013)(emphasis in original).

As indicated previously, the common question for the present class is whether Defendants knowingly paid earned wages to employees after termination. To answer that question, the Court may look to Plaintiff's newly produced evidence of payroll policies as well as databases, systems, and procedures Defendants use when calculating wages owed at termination and subsequent additional wages owed after termination to California separating employees within the class period. While it is not as simple as looking to a calendar, this method of proof supports a finding that issues common to the class predominate over issues individual to class members. See, e.g., *Abdullah*, 731 F.3d at 966-67 (holding that common questions predominated in claim for Labor Code violations because liability and damages could be adjudicated by reliance on the employer's records).

Defendants argue that the summary judgment briefing and Court's order denying summary judgment prove that Garcia's claim, like other class member claims, requires individualized determination. To illustrate, Defendants note that the reason Garcia received a payment after his termination was because he clocked in, but did not clock out when he left, resulting in a "ghost hour" of pay that did not reflect actual time worked. (Mot. at 9). Although a coworker clocked him out an hour after he clocked in, Defendants contend he did not earn the additional pay, which illustrates the need for individualized determinations for Garcia and other class members.

Defendants rely on *Harris*, where the plaintiff moved to certify a purported "late payment" claim under Labor Code sections 201 and 203 without identifying any common way to determine whether a post-termination payment was unlawful. *Harris v. Best Buy Stores, L.P.*, No.17-cv-00446-HSG, 2018 WL 3932178 at *8-9 (N.D. Cal. Aug. 16, 2018) (no violation of law for mistakenly making a duplicate payment to employee). As a primary matter, *Harris* is not binding on this Court. Moreover, its reasoning is

unavailing. There, the district court declined to certify a putative waiting time penalties subclass because plaintiff had not identified a general policy maintained by Defendant that resulted in late payments, in addition to finding that individualized assessments would be required to determine "how much Defendant owed that employee for hours worked, when they were paid, how many hours the employee actually worked, whether the employee was voluntarily or involuntarily terminated, and the method of payment." *Id*. at *8.

Unlike the plaintiff in *Harris*, Plaintiff Garcia has submitted evidence that Defendants maintain a policy that provides for payment after the date of termination under certain circumstances. Similarly, the Court finds Defendants' reliance on the summary judgment briefing and order of this Court unpersuasive. In the order denying summary judgment, the Court discussed the individual circumstances of Garcia's claims only to illustrate that material questions were not answered by Defendants' briefing, not to make a far-ranging comment about the individualized nature of the class members' claims.

Equally unpersuasive are the various scenarios proffered by Defendants concerning individual employees' circumstances that would require the Court to delve into the reasons why the employee may have received a post termination wage payment. Instead, determining whether an employee "earned" wages that were paid after termination can be made by examining the payroll records, timesheets, and other documentation. Well-maintained payroll records will show whether an employee was scheduled to work, if the employee clocked in, and how long the employee was at work. Policies will also reflect whether an employee is entitled to wages when they clock in but do not clock out. The only question that might require individualized proof is whether each employee was entitled to the wages that were paid post-termination but that is a "damages question" that does not overcome the predominance of the common question of law. *Castillo v. Bank of Am., NA,* 980 F.3d 723, 730 (9th Cir. 2020). For the foregoing reasons, the Court finds

that common questions predominate and the proposed classes are sufficiently cohesive to warrant class treatment.

2. *Superiority*

"Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino,* 97 F.3d at 1234. If it is unrealistic to pursue other alternatives, a class action is the superior method for managing litigation. *Id*. citing Fed.R.Civ.P. 23(b)(3). "The following factors are pertinent to this analysis:

(A) the class members' interest in individually controlling the prosecution or defense of separate actions;
(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

Defendants argue that decertification is warranted because the myriad individualized issues make a manageable trial plan impossible. (Mot. at 17). Specifically, Defendants contend that adjudication of the class claims would require more than referencing employment records, as is evident from Garcia's own claims where he "admittedly did not clock out, does not know where the additional pay could have come from, and cannot explain how he 'earned' additional wages *after* he was terminated." (Mot. at 17)(emphasis in original). Where time records alone cannot be used to establish liability, class certification is not manageable, according to Defendants. (*Id*. at 18). In addition, Defendants claim that Garcia has not provided evidence of one instance of wages owed that were not paid, which is required under Labor Code § 203. (*Id*.)

In response, Plaintiff argues that Defendants have already produced time and payroll evidence showing late payment of wages to approximately 50,000 class members, therefore liability can be adjudicated based on these records making it clear that the class

is manageable, and that class treatment is the superior method of adjudicating class members' claims. (Oppo. at 6, 22).

Here, a class action is superior to individual actions because individual class members may have small claims, such as Plaintiff Garcia, that would otherwise prove difficult to pursue. *Amchem*, 521 U.S. at 617 (stating that "'[t]he policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights'" (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).

Importantly, adjudicating the claims on a class-wide basis would also promote judicial efficiency, as [i]t is far more efficient to litigate [violations of Labor Code §§ 201, 203]—the basis for their claim—on a classwide basis rather than in thousands of individual and overlapping lawsuits." *Wolin v. Jaguar Land Rover North America, LLC*, 617 F.3d 1168, 1176 (9th Cir. 2010). To pursue redress for the alleged violations, class members could either participate in the current action, or would potentially file "hundreds of individual lawsuits that could involve duplicating discovery and costs that exceed the extent of proposed class members' individual injuries." *Id*. It would be inefficient for courts to address these claims in numerous individual lawsuits, therefore, class treatment is superior under Rule 23(b)(3)(D).

Additionally, as indicated above, questions of liability can be addressed through evidence of payroll policies, as well as the payroll databases, systems, and procedures used by Defendants for calculating wages owed at termination and subsequent additional wages owed after termination to California separating employees within the class period. When the class proceeds to the validation of claims stage, "claim administrators, various auditing processes, sampling for fraud detection, follow-up notices to explain the claims process, and other techniques tailored by the parties and the court" can be utilized to establish the validity of the claims. *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 667 (9th Cir. 2015). These individualized claim determinations after a finding of liability are specifically addressed in Rule 23. *See* Fed. R. Civ. P. 23 advisory committee's note to

1966 amendment (explaining that certification may be proper "despite the need, if liability is found, for separate determinations of the damages suffered by individuals within the class"); *see also Briseno v. ConAgra Foods, Inc.,* 844 F.3d 1121, 1131 (9th Cir. 2017); *Levya v. Medline Indus. Inc.,* 716 F.3d 510, 513–14 (9th Cir. 2013) (need for individualized damages determinations after liability has been adjudicated does not preclude class certification). Individual issues regarding entitlement to damages do not outweigh the efficiency by which initial class claims may be adjudicated with reference to Defendants' payroll evidence.

For the foregoing reasons, the Court finds the class claims manageable.

### C. California Labor Code § 2698 et seq., the Private Attorney General Act ("PAGA")

In claim two of the First Amended Complaint, Plaintiff seeks recovery of all civil penalties for Defendants' violation of Labor Code sections 201 and 203 as a "proxy for the State of California and on behalf of other Aggrieved Employees" pursuant to the Private Attorneys General Act ("PAGA"). (FAC at ¶ 31).

Defendants argue that Plaintiff's PAGA claims are derivative of his underlying Labor Code claims, thus adjudicating the PAGA claims presents the same issues of individualized determination which makes class treatment unmanageable.

Claims asserted pursuant to the PAGA are not subject to the class certification requirements of Rule 23. *Gallardo v. AT & T Mobility, LLC,* 937 F.Supp.2d 1128, 1137 (N.D.Cal.2013). In addition, a federal court may strike a PAGA claim that "cannot be rendered manageable." *Wesson v. Staples Off. Superstore LLC,* 68 Cal.App. 5th 746, (Sept. 27, 2021). Defendants' challenges to Plaintiff's PAGA claims fail for the same reasons as detailed above.

//
//
//
//

### IV. CONCLUSION AND ORDER

For the foregoing reasons, the Court denies Defendants' motion for decertification and dismissal of Plaintiff's PAGA claims.

**IT IS SO ORDERED.**

Dated: June 22, 2022

Hon. M. James Lorenz
United States District Judge